SCHOTT, Judge.
This is a worker’s compensation case in which plaintiff claims to be permanently and totally disabled and hence entitled to the benefits provided by LSA-R.S. 23:1221(2) of the compensation law. The trial court awarded a lump sum of $5,000 and assigned no reasons for judgment. Plaintiff has appealed seeking benefits for permanent and total disability, medical expenses and penalties and attorney fees.
Plaintiff was employed as a driver of refrigerated trucks by defendant, B.I.C. Corporation from December, 1980 until March, 1981. He sustained a back injury which led to a compensation settlement with defendants in December, 1981. In the present case plaintiff claims to be disabled from respiratory injury caused by ammonia inhalation on one of defendant’s refrigerated trucks in March, 1981.
Plaintiff testified as follows: One of the trucks he drove on a regular basis for the last few weeks of his employment had an ammonia leak. He smelled it while driving, whenever he opened the back of the truck, and especially when he entered the back of the truck at ten to fifteen delivery stops each day. The fumes caused dizziness, irritation of his eyes and sinuses, nausea and choking. He reported the leak to the mechanic, the truck was taken in for repairs, but the leak was not corrected. After he left his employment, he suffered with impaired breathing, shortness of breath, and headaches, but he didn't see a doctor about his problems because he had no money and didn’t relate the problem to his former employment. He finally did see Dr. Morton Brown, a specialist in pulmonary diseases, in January, 1982, on the advice of his attorney. Medication prescribed by Dr. Brown has given him some relief from his symptoms. But at the time of the trial in March, 1983, he was still suffering with shortness of breath, headaches, and impaired vision. He could not cut grass, climb stairs, or “walk fast or long.” He finally stopped smoking about nine months prior to trial. His testimony was corroborated in part by that of his wife..
Medical reports from Dr. Brown introduced by stipulation contain the following: Plaintiff came to him in January, 1982, complaining of difficulty with breathing, which commenced in March, 1981, when he inhaled ammonia fumes. Plaintiff has smoked one pack of cigarettes daily for many years. Testing indicated very severe obstructive ventillatory impairment. The doctor’s opinion was that in view of the history provided by plaintiff “it is most likely” that plaintiff’s exposure to the ammonia caused some “permanent damage to his bronchial system, causing very severe bronchiolitis and bronchitis.” The doctor’s first report concluded: “Although smoking can contribute in part, there is no doubt that the affects (sic) of ammonia inhalation of a significant concentration on the bronchial epithelium, can result in the derrange-ments (sic) that have been manifested by my studies in the office here on January 22, 1982.” On February 12 Dr. Brown found plaintiff with continued shortness of breath and wheezing and repeated his diagnosis of “severe obstruction of the small airways and moderate severe restrictive ventillatory impairment. On February 26, Dr. Brown conducted pulmonary function studies on plaintiff which demonstrated severe obstructive ventillatory impairment “but the degree of restriction is somewhat less.” Moderate improvement had resulted from the use of bronchodilators and possibly from other factors inherent in plaintiff’s condition of chronic bronchitis. At this time Dr. Brown told plaintiff he must stop smoking because this was an aggravating factor to the bronchitis. Dr. Brown stated that continuation of smoking would continue the inflammatory process. On April 13, 1982, Dr. Brown stated that plaintiff’s respiratory insufficiency and chronic lung disease left him totally and permanently disabled.
Defendants arranged for plaintiff to be examined by another specialist in pulmonary disease, Dr. Jay M. Shames, on Sep *1241 tember 3, 1982. His studies indicated that plaintiff had hyperinflation or excessive air trapped in his lungs which in turn indicated either pulmonary emphysema or chronic bronchitis. Both of these can be caused by smoking. Pulmonary function studies conducted on September 7 confirmed the diagnosis of obstructive lung disease in the form of bronchitis “and very likely pulmonary emphysema.” He thought it was “very unlikely” and “a very remote possibility” that ammonia inhalation could have caused plaintiffs condition. Instead he thought it resulted from cigarette smoking which plaintiff said he was still doing at the rate of a half-pack per day. He also thought plaintiffs condition might improve if he stopped smoking. As to disability, Dr. Shames thought plaintiff was disabled from doing any kind of work which would require great exertion. He was incapable of manual labor and climbing stairs, but he could drive an automobile or perform a desk job.
The principal difficulty with this case is the trial court’s award of a lump sum of $5,000. Plaintiff would have us amend the judgment to award benefits for permanent total disability under R.S. 23:1221(2) as written prior to amendment by Act 1, 1st Ex.Sess., 1983, but we are unable to do this on the basis of the record before us. The statute as then written provided as follows:
“(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability.”
It was the trial court’s function to resolve the conflicts between Dr. Brown and Dr. Shames in the light of plaintiff’s testimony. Plaintiff’s smoking was a significant issue. He insisted that he had smoked only a half-pack of cigarettes per day and that he stopped about June of 1982'. Yet both doctors said he told them he smoked a full pack a day, and Dr. Shames said he was still smoking a half-pack daily in September, 1982. There are issues as to whether his condition was originally caused by smoking and even if not, whether it was significantly aggravated by smoking between March, 1981, and June or September, 1982, or even later. Furthermore, plaintiff’s condition prior to March, 1981, depends on his and his wife’s credibility.
In attempting to harmonize the judgment with the compensation act we have considered the possibility that the trial judge found plaintiff temporarily totally disabled and entitled as such to the benefits provided by R.S. 23:1221(1). He was earning about $150 per week so that the $5,000 was conceivably based upon two-thirds of that amount for 50 weeks. However, if the trial court concluded plaintiff was disabled when he left defendant’s employment and that disability was work related, all the medical evidence shows that such disability would be permanent. Furthermore, the $5,000 had to include almost $1,000 of medical expenses incurred by plaintiff at the time of the trial.
Even giving plaintiff every benefit of the doubt leaves in question the issue of whether plaintiff is entitled to permanent total disability benefits under R.S. 23:1221(2) or only partial disability benefits under R.S. 23:1221(3).
Plaintiff was entitled to an adjudication under the worker’s compensation law by being given a lump sum award which cannot be reconciled with the law or the facts. He was deprived of that right. On the other hand, the ultimate disposition of this case depends so heavily on an evaluation of plaintiff’s credibility and a reconciliation of conflicting medical testimony that it would be unfair and unjust to the defendants to assume that the trial court’s award represents an adjudication that plaintiff is totally and permanently disabled. This court should not be placed in the untenable position of performing the trial court’s function *1242 as the trier of fact. A remand under these circumstances is warranted by C.C.P. Art. 2164 which requires us to render a judgment “which is just, legal, and proper upon the record on appeal.”
Ordinarily, we would permit the trial- court on remand to consider the full spectrum of possibilities, including dismissal of plaintiff’s case, but the status of the record prevents this. Defendants neither appealed nor answered the appeal so that the award of $5,000 is res judicata. Plaintiff is entitled to this amount at least, if no more. As to plaintiffs claim for penalties and attorney fees, a resolution of this issue can likewise best be made by the trial court.
Accordingly, this case is remanded to the trial court so that a proper adjudication can be made as to what benefits under the worker’s compensation law plaintiff is entitled. In no event is plaintiff entitled to less than $5,000 with legal interest from date of judicial demand. All costs to date, including costs of this appeal, are assessed against defendants.
REMANDED.